Morning, Your Honors. Thank you. May it please the court, my name is Mary Ann Dugan. I'm the plaintiff's attorney. This case, as you no doubt have recognized from reading the briefs, has a very long history of the plaintiff, individuals, and organization attempting to get some relief from the federal government for the conflicts that they are experiencing with off-road vehicle use in their immediate area. Ms. Dugan, I wonder if I could get your help on something. This is, the neighbors obviously are very concerned, understandably so, but as you well know from your long experience in this case, this is a matter of administrative law. And our role here basically revolves around construction of administrative law and the way you have pled this case. My first question to you is, as you know, there were executive orders by President Nixon, by President Carter, and a variety of amendments to the regulations respecting ORV use. But where in the executive orders or the FLPMA do you find any legal requirement for the agency to close down the LCM area to ORV use? The 43 CFR 8341.2a, which was interpreted by this court 25 years ago in Sierra Club versus Clark, requires immediate closure. But that's after somebody makes a determination that there's an adverse effect. Where has that determination been made? Actually, what this court stated in Sierra Club versus Clark on page 690 of that case, excuse me, is that the issue is whether the damage to the area amounts to considerable adverse effects, which require closure. That's how this court interpreted it. And I respect that. I guess what I'm trying to understand is who in the agency made that determination. You agree that someone has to make that finding, right? I have two answers to that in the alternative. My first answer would be no, Your Honor. 25 years ago in Sierra Club versus Clark, this court stated that the issue is whether there are considerable adverse effects. Help me here now. I realize what that says. But this is a fact-finding situation. I mean, I could look out, and I could look at that freeway and say that there's an adverse condition that exists out there. But I'd have to go out and measure and apply it. But basically, in this particular case, I'm looking for the citation and the record to a finding by an authorized officer of the agency that complies with the Sierra Club versus Clark description. Yes. So in the alternative, going to the record, I will go back. It's always good to go to the record. Thank you. That's true. And so I do have citations to the record. And in fact, I think I will go backwards in time rather than starting at the earlier time because we did focus on the 2003 specialist report quite a bit in our briefs. But more recently, ER 118, which is the March 2007 letter from Christina Welch, the field manager for the resource area, she stated that there are areas needing immediate action to move the intense use away from the road where it jeopardized users. There are- What's the date on that? That is March of 2007. As I recall, this litigation was started well before that. No, it was November 2007 is when our lawsuit was filed. The predecessor was before, right? There wasn't a predecessor, but the petition was in 06. So that might be what you're recalling. I will return to that document briefly. But just to give you the overview, ER 509, December 06, again, moving backwards in time, that same person, Ms. Welch, promised an interim solution. I'm sorry. So now we're on December 06, which is the field manager, Ms. Welch. She called it a solution. She says that there will be a solution in the spring of 2007 that the historical uses have grown to the point of interfering with each other, and that she promises an interim plan. But again, and I don't mean to dominate this conversation here, but this is what I'm struggling with here. Sierra Club versus Clark says that the BLM has to find that the effects are sufficiently, and quote, severe, to constitute, and quote, considerable adverse effects. As you know, as an experienced practitioner in this area, when agency lawyers or officials make such determinations, they actually cite such language to make certain everybody knows that's what they're doing. Now, what you just talked about before certainly shows a recognition on the part of Ms. Clark of some concerns that she has, and perhaps even some things that she thinks need to be done. But I'm not hearing any reference to a finding or determination by her as an agency representative of the requirements of Sierra Club versus Clark, et cetera. With due respect, Your Honor, I don't think you'll ever see such a case. Because the moment the agency personnel makes that determination, there's a non-discretionary mandatory duty that's been clarified for 25 years by this court for immediate closure. The problem is when the agency personnel acknowledges that there are considerable problems, but does not use the specific language of the regulation. Doesn't that create almost a catch-22? Because under 706-1, we don't have jurisdiction to compel the BLM to close the mountain, Little Canyon Mountain, for ROV use unless there has been such a finding. And yet, you're saying they don't make such a finding because they're concerned they would then do immediately have to close it down. Well, it is a catch-22 if that's how you interpret the regulation. And I would submit, Your Honor, that in Sierra Club versus Clark, there was not that explicit finding, or else the area would have been closed. What happened in Sierra Club versus Clark was that the agency acknowledged impacts, but did not invoke the language of the regulation, and then started arguing about how much of the area was already closed for vehicle use, which is how that case is different from this case. Counsel, I have a question. In the record, it is suggested that the John Day Basin Resource Management Plan was due to be finalized. Originally, there was a date in October of 2009, but then the BLM's brief, I think, said the summer of 2010. And I'm wondering, has that plan been finalized? And if so, what effect does that have on our case? The plan has not been finalized. I visited the website cited in the government's brief at page 9 last night. It is exactly identical to as it was earlier, which is the last update being we expect to have something by the end of 2010. There has not been even a final environmental impact statement filed, much less the record of decision, which would take a few months longer. And our clients did comment on that, but it is still in process. And that is the problem here, is that as the court recognized in Sierra Club versus Clark, the RMP amendment process is very lengthy. And actually, Ms. Welch acknowledges this in the March of 7 document, ER 118, that this is a lengthy process. But she says that's the only process that we have for addressing the noise issues. And she's wrong. That document is where the error is most blatant. She states that she's taking an interim action to address safety issues. And she only moved the access area 100 yards. And she acknowledged that that would not address the noise and other impacts and conflicts with the other users. But that would be going through the resource management plan amendment process, which was lengthy. And it is still in process. And that's the problem here, is that this is happening throughout the country, actually. And this is just one example where the citizens have been particularly proactive in submitting videotapes with audio, daily incident reports, logs. Even the sheriff's office submitted its complaints, its concerns. Isn't the counsel an indication that courts are, to some degree, hamstrung by the way the regulations read in the case law that construes them? Because we're kind of in between here. If there's no determination, then we may not have jurisdiction. On the other hand, you're not saying that you're not making a, you have not made a pleading that claims that its failure to act was arbitrary and capricious. So we're on the horns of a dilemma here, just like everybody else seems to be. Well, our claim is a failure to act claim. That is what it is. It is not challenging a specific action. And I would submit, Your Honor, that So you acknowledge that 7062 does not help you? Right, this is not a 70, well, it may have helped us, but it's not a 7062 case. But in order for a failure to act to sustain a successful piece of litigation, there has to be a non-discretionary requirement. And the difficulty I have, I guess, is similar to the difficulty that Judge Smith seems to be expressing in his questions, which is the predicate for the requirement to act is missing, it seems to me. And that is the agency making a finding. And I just don't see in the absence of a finding how there is in the statute or the regulation a mandatory non-discretionary requirement. Well, Your Honor, what I'm arguing is, and I guess I'm just, well, maybe my argument's just being rejected. And if that's the case, then I guess, what I'm arguing is that Sierra Club versus Clark says that what you are to find, the issue before you, is whether there are significant or considerable impacts. And as I said, expecting the agency to actually make the determination with those words as are set forth in the regulation is not a reasonable interpretation of how the regulation could work. Counsel, are you saying they never do that? They never issue an order saying that there's considerable adverse effects? They have done it at least twice, and they've been sued by the off-road vehicle folks. But they've done it. They have done it. What I'm saying is it's unreasonable to expect that you would ever see a lawsuit to enforce the requirement by citizens who want to get an area closed if the interpretation is, we're going to wait and wait and wait until the BLM actually sits down and uses those words. Here we have a statement from March of 07, almost four years ago, from the resource management person saying, I recognize that there are terrible impacts here, that you are the ground zero of this off-road vehicle use, and that immediate action is needed. She actually used the word immediate in her March 07 statement. Counsel, you have about two minutes remaining. If you'd like to save that for rebuttal, you may. I would. Thank you very much, Your Honor. Good morning, Your Honors. Nicholas D'Amacio for the United States, and may it please the Court. I'd like to make three points this morning. First, why the plaintiff's claim under APA 706-1 must fail. Second, very briefly, I'd like to point out that, again, that the plaintiffs have not brought a claim under APA 706-2.    under APA 706-2 is not a claim under APA 706-1. And third, I'd like to update the Court on the status of the revised management plan for the John Day Basin. So beginning with APA 706-1, which is where most of the questions from the panel have concentrated so far, the fundamental problem with this case under APA 706-1 is that the plaintiffs cannot force the BLM to close Little Canyon Mountain to off-road vehicle use. Because the authorized officer in this case has not come to a determination that off-road vehicles are causing or will cause considerable adverse effects on the mountain. What is the opportunity for a party to force some kind of action? In other words, we have a situation here that's gone on for years and years and years without any formal resolution, unless you have a different update on where the plan sits. And I'm wondering what a person is supposed to do in that situation when the agency doesn't make any determination one way or the other. In other words, is there a duty to decide yes or no on the adverse impacts question, even if it turns out they're saying no to these individuals? Is there some point at which they have to do something? Certainly, Your Honor. So to address that point, I'd like to make absolutely clear what the authorized officer determined in this case. In the denial of the plaintiff's petition, the letter clearly observes that there's insufficient evidence to conclude that off-road vehicles are causing or will cause considerable adverse effects on the mountain. Do you have a citation of the record on that? The denial of the petition is at excerpt of record pages 74 through 75. And the authorized officer observes in her denial of the petition that she is not aware of any significant increased resource damage due to off-road vehicle use on the area. That constituted a determination under 8341 that there was insufficient evidence to conclude that off-road vehicles are causing or will cause considerable adverse effects under the statute here, or the regulation here, which is 8341. If I'm understanding you correctly, you're saying that a determination has been made in that context. That's correct. So this should be a 7062 action claiming that the decision was arbitrary and capricious. And as I understand your opposing counsel, she's saying she acknowledges this is not such an action. That's correct, Your Honor. So what our point is is that the BLM has not come to an affirmative determination that there are or will be considerable adverse effects on the environment. And that is all the language of the regulation requires them to do. But there was a determination in this case. There was a denial of the plaintiff's petition under the APA. And that denial, there's no dispute that the letter was a denial of the plaintiff's petition and that it constituted a determination under the statute that there was insufficient evidence to make the requisite determination that would require closure of the area. So in response to Judge Hall. So if there are new facts, there has to be a new petition to require a new response? Or what is someone to do next if in the ensuing years more problems arise or more evidence is found? Certainly, there's nothing that would foreclose a plaintiff from filing another petition under 8341 to request the area to be closed. Because now there's this evidence of considerable adverse impacts. And if they attach that evidence to their petition, then certainly the BLM would take a look at it and respond within its duty under APA 555 in a reasonable amount of time to that petition. Just following up on Judge Graber's point, this has gone on for a number of years. How long can the agency, in effect, demur, take no action necessary, not make the necessary findings under Sierra Club versus Clark? Can it go on for 10 years, 15 years, 20 years? Well, Your Honor, the statute leaves the timing and the manner of the determination under 8341 entirely to the BLM's discretion. I get that. But I guess I'm saying it's just a matter of logic. Can the agency indefinitely defer taking such an action, which has the result of frustrating certainly a 706 sub 1 claim by the plaintiffs in this case? Well, perhaps to reframe a little bit, maybe what you're saying is that if a plaintiff were to come forward with concrete evidence of considerable adverse effects on a certain resource area and submit a petition requesting the BLM to make that determination, and the BLM denied that petition, then certainly there's an argument to be made that a 706 2 action would lie. And you could come to court, and you could ask the court to set aside the denial of the petition as arbitrary and capricious. Well, the complaint does make a 706 2 claim also, at least as I read it. It seems to incorporate that. But so I guess just to clarify, we have here a petition and a response back in 2006. And the additional evidence you're saying in order to reach court would have to be in the form of another petition and denial? I believe that's correct, Your Honor. This petition has been denied. And so at this stage of the game, there's no- So unless it was arbitrary or capricious or et cetera, then they have to start over. That's correct, Your Honor. And they have not brought an APA 706 2 claim in this case. If you look through pages 8 through 10 of their reply brief, they very clearly explain that they are not And so there's no opportunity in this case to look behind the agency's determination. As this court held in Coos County versus Kempthorne, an APA 706 1 claim depends entirely on the determination that was made by the agency and then decides what legal consequences flow from that determination. It doesn't look behind the determination to decide whether it should have been made differently. I want to get to your third point, which was the status of the plan. The BLM promised this going on two years ago. And October 1, 2009, I think, was the original date that there would be a final plan. And then it said, no, the summer of 2010. And here we are in 2011. And if opposing counsel is correct, there's still no final plan. Is that true? Well, I'm glad you're asking that question because I would like to update the court on that. As we mentioned in page 9 of our brief, the BLM is currently in the process of revising that management plan for the John Day Basin. This is a very large project. It encompasses around 300,000 acres of land. And only a small section of that land is the Little Canyon Mountain. Now, part of the redesignation is going to be part of that revised management plan is going to be a redesignation of Little Canyon Mountain as either open, limited, or closed to off-road vehicle use. And in that context, the BLM under 8342 is required to consider the compatibility of ORV use on surrounding existing land uses, including with respect to noise. This is very interesting, but it still doesn't answer my question. There's no final plan. Is that true? That's correct. OK. And it was promised almost two years ago. Is that also correct? The original deadline was for a final EIS to come out was around the end of 2009. And you're correct, Your Honor. That's been delayed because of the magnitude of the project. But a draft EIS has been issued. And the preferred alternative under that draft is likely could, well, the preferred alternative under that draft could mitigate the noise impacts on surrounding land uses considerably. This is a very frustrating case, because it looks like there are a lot of problems out there in the real world, and that the BLM eventually hopes to address them, but it won't do anything now. Is this a situation that would be assisted in any way by mediation? Your Honor, the BLM, no, Your Honor, I don't think mediation is necessary in this case. The BLM is proceeding forward with that revised management plan. And the final EIS, the BLM anticipates that it's going to be, that's the final environmental impact statement on the revised management plan, is anticipated to be out within the next several months. The plaintiffs have had an opportunity to comment on the draft EIS, which includes alternatives that could potentially mitigate the noise on the surrounding land uses considerably. And the BLM has taken those comments into consideration and has been doing everything it can to resolve the conflict in the appropriate way under 8342 in this case. It just, unfortunately, is a very long process that requires consideration of a lot of different factors. And again, Little Canyon Mountain is a small portion of the larger area that has to be, the management plan has to be redone for. This isn't the first environmental case that this panel has seen, but it does seem to be taking a lot longer than most of them, just from sort of historic observation. I'm not sure whether or not that's true or not, but I certainly appreciate what the court is saying, is that the frustration over the amount of time that this takes is understood. And I want to let you know that that revised management plan is on track, moving forward, and that the BLM anticipates a final EIS to be released within the next several months. After that final EIS is going to be released, there will be a 30-day dispute period where the parties who have submitted comments will have an opportunity to dispute what's in the final EIS. The BLM will then resolve those disputes and issue a final record of decision on the revised management plan. And I just, again, want to highlight that under the preferred alternative in that draft EIS, there are substantial mitigations for the noise impacts on the surrounding land uses. And it depends upon what ends up in the final record of decision, obviously, but it's not as if the BLM has been completely turning a blind eye to these surrounding homeowners. So counsel, are you saying that in that final EIS, if they were to find that there was mitigation of the impact, then there could not be a considerable adverse effect? No, Your Honor. I'm not making any assertion of that nature. The two processes are separate. 8341 and 8342 are separate processes. 8341 deals with considerable adverse effects on the environment. 8342 deals with designation of an area as open, limited, or closed to off-road vehicle use. And the effect of this plan, when it's revised under 8342, this Court held would not moot out a claim under 8341. All I'm trying to- But it does suggest a potential relationship. If there are requirements to mitigate an adverse effect, which is what you're saying, then it sounds like there's an adverse effect. I mean, I understand the dance that you're trying to go through, but it does sound as if you're in a funny- your agency, in a very odd way, is trying to avoid using the magic words in this process that it actually sounds like it's using in another process to say, well, we're going to mitigate those- we're not calling them considerable adverse effects, those bad things out there. We'll mitigate them, but we won't give them a name for this purpose. I don't think that's entirely accurate, Your Honor, and the reason why is because under 8341, the considerations of considerable adverse effects are on environmental parameters, such as soil, vegetation, and wildlife. Under 8342, which is the designation process that the BLM is explicitly required to consider the compatibility of ORB use on existing land uses with respect to noise. That consideration is not one of the considerations under 8341, and that's why, in this case, when the authorized officer took a look at the evidence, she concluded that evidence was insufficient to conclude that considerable adverse effects on the environment were taking place, such that closure under 8341 would be required. But said, there is a process for considering these noise impacts, it's under 8342. We'd like you to be involved in that process, and that process continues to move forward. So, you're saying, if I understand you correctly, that noise can never be an environmental impact, or just that it isn't in this case, because presumably it could bother wildlife or other natural things other than humans. That's right, but I'm not saying that noise would never be a relevant inquiry under 8341 if there were impacts on wildlife or wilderness requirements, those types of things. But what the complaints in this case are about, the letters and the incident reports, are primarily about noise on surrounding land uses, homeowners next to the public land that's at issue. And that's simply not one of the considerations under 8341, but is a consideration under 8342. So, what we would respectfully request your honors, in this case, to do, is to analyze this case under APA 706-1, exclusively, and hold that the BLM was under no legal obligation to close the area because the authorized officer had not determined that off-road vehicles are causing, or will cause, considerable adverse effects on the mountain, and therefore, affirm the judgment of the district court. Unless there are any further questions, I would yield the balance of my time. Thank you, counsel. Ms. Dugan, you have some rebuttal time remaining. Ms. Dugan, since we don't have a whole lot of time, let me just get right to this. The Sierra Club versus Clark, upon which you rely, on the last page of the opinion, and I'm sorry, I don't have the exact site here, but you may want to get it, it's under subsection six, as far as this, I guess it would be a West Keys section. Anyway, this is what it says. The Sierra Club's interpretation of the regulation would inevitably result in the total prohibition of ORB use because it is doubtful that any discrete area could withstand unrestricted ORB use without considerable adverse effect. However, appealing might be such a resolution of the environmental dilemma, and this is the key part. Congress has found that ORB use, damaging as it may be, is to be provided, in quotes, where appropriate. It left determinations of appropriateness largely up to the secretary in an area of sharp conflict. If there is to be a change, it must come by way of congressional reconsideration. The secretary's interpretation that this legislative determination calls for accommodation of ORB usage in the administrative plan, we must conclude, is not unreasonable, and we are constrained to let it stand. It then went on, of course, in a sub-two section to say that the secretary's determination in that case was not unreasonable, and upheld the secretary's position. Isn't the answer here new legislation? Well, Your Honor, first of all, the issue that the court was addressing in that section was the argument regarding the geographic scope of the area. And the court deferred to the BLM's finding that because only 0.025% of the land was open to ORBs, that that- But the argument, though, was much broader, was it not? It's quite resonant with what you are arguing here, that by definition, this usage with its noise and the dirt and everything flying around is, by its nature, horribly adverse. That's what they claimed. Well, I would disagree that that's what was at issue in- I see I'm actually out of time, if I can- As long as I'm asking you questions, you're fine. OK. The focus of the court, and I don't mean to deny the broad scope of the language that's being used here, but what the court was looking at was Sierra Club's argument that the court must focus on this one very small area that was open to OHVs. Do you agree that you are asking us, in effect, to override or superimpose a new judgment on the Sierra Club case, where we are, in effect, instructing the agency that under these factual circumstances, it must find that there are adverse consequences? No, Your Honor, I don't. And the definition of arbitrary and capricious says- That's the sub two part. I'm talking about the first part, the sub one part, 706-1. Aren't you saying to us, you look at these facts here, we're not hearing anything from these folks. And as a result, we're stymied. We want you to tell them what they need to do. Well, I think the arbitrary and capricious analysis applies to the unreasonable delay in issuing a decision. And the court, I'm sorry, Ms. Welsh, when she made her determination in July of 06 that she wasn't going to grant the petition, which was not required, there was no petition required under the process, of course. She then asked for more documentation. It was given to her. The BLM hired a facilitator to look into this. And a few months later, she acknowledged that the 2003 actions by BLM had caused both social conflicts and safety hazards. She said it's essential to fix these problems. That was her word. And then a month later, she said an immediate solution is required. She was saying everything but the magic words in the regulation. And to not find that. Why do you suppose that was, counsel? Because she didn't want to invoke the regulation, which would require immediate closure. She didn't want to use those exact words. I mean, that's, I guess. You want us to do it for her. Well, I think somebody does in this kind of very extreme situation, where the agency all but uses the magic words that are in the regulation. And I also continue to submit that Sierra Club versus Clark doesn't require the agency to have used the magic words. It requires that there be considerable adverse effects, not that the agency have specifically acknowledged that. Thank you, counsel. We appreciate very much the arguments of both counsel. The case just argued is submitted.
judges: Benitez, Graber, Smith M.